IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JOHN HALL THOMAS,
      Appellant,

-vs-                                              Case No. A-14-CA-551-SS

GRAHAM MORTGAGE CORPORATION,
      Appellee.

## ORDER

BE IT REMEMBERED on the 4th of September, 2014, the Court called a hearing in the above-styled cause. Appellant John Hall Thomas appeared pro se, and Appellee Graham Mortgage Corporation (Graham) appeared by and through counsel. Before the Court is a bankruptcy appeal filed by Thomas, Thomas's Brief [#11], and Graham's Brief [#12]. Having reviewed the documents, the arguments of the parties at the hearing, the bankruptcy records, the governing law, and the file as a whole, the Court now enters the following opinion and order AFFIRMING the bankruptcy court.

### Background[1]

In August 2007, Thomas executed a Note in the original principal amount of $3.4 million payable to Graham. The Note was secured by a Deed of Trust on a 618-acre tract of land Thomas owned in Burnet and Llano counties. Thomas executed a Non-Homestead Affidavit and Contingent

---

[1] This is not this Court's first go-round with Thomas as it has previously reviewed much of these same facts and issues in prior appeals, including: (1) *Thomas v. Graham Mortg. Corp.*, 11-cv-818-SS (W.D. Tex. Nov. 22, 2011); and (2) *Thomas v. Graham Mortg. Corp.*, No. 12-cv-580-SS (W.D. Tex. Jan. 16, 2013) and *Thomas v. Graham Mortg. Corp.*, No. 12-cv-580-SS (W.D. Tex. Jan. 16, 2013).

Designation of Homestead, whereby Thomas renounced and disclaimed any homestead right, interest, or exemption in the 618-acre tract, and conditionally designated 100 acres as his homestead.

After multiple defaults by Thomas, Graham posted the property for a June 2009 foreclosure. Thomas filed a lawsuit in state court to stop the foreclosure and obtained a temporary restraining order (TRO). Graham responded and also modified the loan documents so the Note would no longer be secured by the 100 acres Thomas conditionally designated as his homestead. In August 2009, the court dissolved the TRO, concluding Thomas was unlikely to prevail on the question whether any portion of the 618 acres was his homestead and on his assertion Graham had not properly cured any alleged violations of the Texas Home Equity Lending Laws. In September 2009, Graham foreclosed on its security interest in the remaining 518 acres of the property securing the Note and applied the proceeds to the outstanding balance on the Note.

Thomas filed a motion for summary judgment in state court in December 2010, and Graham cross-moved for summary judgment in February 2011. The state court granted Graham's motion in April 2011 and denied Thomas's motion in its entirety. The state court concluded none of the 618 acres were Thomas's homestead property as of August 2007 and ordered Thomas to pay Graham the sum of $1,434,999.28, with interest. Four days later on April 25, 2011, before the state court entered its final judgment, Thomas filed pro se a voluntary petition for Chapter 11 Bankruptcy.

Graham was able to get an order modifying the automatic stay to allow the state court to enter a final judgment, and Thomas appealed that order on August 2, 2011. On August 16, 2011, Graham filed its Proof of Claim, Claim No. 2 (amended on September 27, 2013) in the bankruptcy proceeding and asserted a claim of at least $2,426,335.81 as of July 31, 2013. On November 22, 2011, this Court affirmed the Bankruptcy Court's order modifying the automatic stay.

On October 19, 2011, after remand from the appellate court, the state court entered a new final judgment, which declared that none of the 618 acres were Thomas's homestead property as of August 14, 2007, and ordered Graham recover the sum of $1,434,999.28 with interest.

In March 2012, the Bankruptcy Court denied Thomas's claimed homestead exemption, finding none of the 100 acres were exempt property. The Bankruptcy Court also converted Thomas's case to a Chapter 7 Bankruptcy because Thomas failed to propose a confirmable plan of reorganization. This Court affirmed the Bankruptcy Court's homestead exemption ruling and the conversion to Chapter 7 on January 16, 2013.

On April 4, 2013, the Court of Appeals in Austin entered its judgment affirming the state court's summary judgment in part, and reversing and remanding in part. The appeals court affirmed none of the 618 acres were Thomas's homestead as of August 2007 and dismissal of Thomas's claims against Graham, but remanded the case to provide Thomas an opportunity for hearing to determine whether some of Graham's deficiency claim should be reduced based on a valuation as of the time of the pre-petition foreclosure sale.

Thomas then improperly filed a motion to dismiss the bankruptcy proceedings. In response, the Bankruptcy Court allowed Thomas to either: (1) opt for the Bankruptcy Court to conduct the valuation proceeding, in which case the court would withhold approval of the sale of the remaining 100 acres until Graham's deficiency claim was ascertained—thus leaving open the possibility that if Graham's deficiency claim were to be low enough, the trustee might not be forced to sell the land at all, potentially returning it to Thomas, or (2) proceed with the state court appraisal process, but in the meantime let the trustee proceed to liquidate the estate's property (including the 100 acre tract) and begin paying creditors and fees, holding the rest until the amount of Graham's deficiency (if any)

had been ascertained. Thomas affirmatively elected option one, stipulating in so doing that the valuation and claims allowance process was a "core" bankruptcy matter.

After a two-day hearing and six witnesses, the Bankruptcy Court entered its Findings of Fact and Conclusions of Law in connection with Graham's Proof Claim on March 26, 2014, and determined the fair market value (FMV) of the 518-acre property at issue (the Subject Property) as of September 1, 2009, was $2,850,606 ($5,500 per acre). Applying this value against the total amount owed under the debt, the Bankruptcy Court found the remaining deficiency owed to Graham as of the foreclosure date was $937,579.69. The Bankruptcy Court then applied interest and concluded the total sum due to Graham on its deficiency claim is $1,215,000.53. On April 22, 2014, the Bankruptcy Court entered its Final Order, holding Graham's Proof of Claim should be allowed as a general unsecured claim in the total amount of $1,781,670.02.

Thomas filed his notice of appeal on May 5, 2014. The Court permitted Thomas's counsel to withdraw, and Thomas, once again proceeding pro se, filed his brief on August 4, 2014. Graham filed its brief on August 21, 2014. The Court heard oral argument on September 4, 2014.

## Analysis

On appeal, "[a] bankruptcy court's findings of fact are subject to review for clear error, and its conclusions of law are reviewed de novo." *In re Morrison*, 555 F.3d 473, 480 (5th Cir. 2009). "Under a clear error standard, this court will reverse only if, on the entire evidence, [it is] left with the definite and firm conviction that a mistake has been made." *Id.* (internal quotation omitted).

While Thomas attempts to raise a number of issues on appeal, the only one properly before the Court is whether the Bankruptcy Court's finding of the FMV of the Subject Property as of

September 1, 2009, was clearly erroneous.[2]  "[A]ll appraisal opinion is at best something of a speculation, and the question of market value is peculiarly one for the fact finding body." *Williams v. State*, 406 S.W.3d 273, 284 (Tex. App.—San Antonio 2013, pet. denied) (citation omitted). A review of the record and the Bankruptcy Court's March 26, 2014 Findings of Fact and Conclusions of Law demonstrates the Bankruptcy Court carefully analyzed the relevant materials and evidence, came to reasonable conclusions, and nothing indicates its finding on fair market value was clearly erroneous.

In finding the FMV of the Subject Property as of September 1, 2009, was $2,850,606, the Bankruptcy Court considered the testimony of all six witnesses (Thomas as owner, Brad Goebel as broker, Dean Castelhano as lender, and Chris Griesbach, Martyn Glen, and Monte Ezell as expert appraisers), the written reports, as well as the maps and extensive additional information regarding the Subject Property contained in the expert reports. The Bankruptcy Court carefully reviewed the witnesses' testimony, assessed each witness's credibility, and explained the reasons why it found some testimony more helpful and believable than others.

The issue of FMV largely boiled down to a battle of the experts. The Bankruptcy Court found all three experts were qualified to provide opinions on FMV as of September 1, 2009, and all of their testimony was deemed admissible. The Bankruptcy Court noted several areas of agreement between the three experts, including that by September 1, 2009: (1) the Subject Property had lost

---

[2]Thomas, in his brief, continues to focus on issues not particularly relevant to these proceedings, including issues previously decided by the state court, the Bankruptcy Court, and this Court (e.g., homestead issues, conversion, etc.). In the Bankruptcy Court's Pretrial Order, only three specific issues were identified as disputed in the trial below: (1) the fair market value as of September 1, 2009 of the 518 acres that were the subject of the foreclosure sale; (2) after applying this FMV to the obligations owed by Thomas to Graham on September 1, 2009, the resulting amount owed by Thomas to Graham; and (3) leaving aside Graham's claims for post-foreclosure attorneys' fees and any interest thereon, the amount, if any, of Graham's allowed deficiency claim as of the Petition date. Consequently, much of what Thomas discusses is not preserved for this Court's review and is irrelevant to the instant appeal.

value compared with earlier time frames; (2) it was, at a minimum, very difficult to get the amount and type of financing that would have been required to purchase the Subject Property; and (3) the "highest and best use" of the Subject Property was for "ranch/agricultural/recreational purposes."

The Bankruptcy Court gave little weight to Thomas's expert, Griesbach, finding he damaged his credibility at trial. The lack of credibility was based on Griesbach's use of belated comparables at the hearing that were not included in the original report, his unsatisfactory explanation regarding the market analysis used in his appraisal (including becoming "visibly uncomfortable" when cross-examined on the issue), his failure to make adjustments for the shape of the Subject Property, his statements that highest and best use of the Subject Property was residential (despite statements to the contrary in his report), and his argument that various offers made on the Subject Property corroborated his opinions. The Bankruptcy Court also found the comparables used by Griesbach to be of little weight because they were from time periods long before September 1, 2009 (an average of 33 months prior to September 1, 2009, for the nine comparables).

The Bankruptcy Court found Graham's expert, Glen, to be helpful and generally credible. The court did disagree with some of Glen's comparables, however, and concluded his appraisal somewhat understated the value of the Subject Property. The court found Graham's expert, Ezell, credible and his comparables useful. Although it did not agree 100% with his analysis, the court found Ezell the most credible of the three experts.

Ultimately, after carefully analyzing and weighing the three expert reports and their testimony, the Bankruptcy Court reached its conclusion the Subject Property was worth $5,500 per acre as of September 1, 2009. This number was far less than what Griesbach opined, but somewhat

more than suggested by Ezell and Glen. The Bankruptcy Court's findings were considered, reasoned, and based on the facts and evidence before it.

Perhaps the most contested issue on appeal is the Bankruptcy Court's finding the highest and best use of the Subject Property was for ranch/agricultural/recreational purposes. Thomas insists both in his briefing and at oral argument the highest and best use as of September 1, 2009, was residential development. The record supports the Bankruptcy Court. All three experts said the highest and best use was for ranch/agricultural/recreational purposes in their reports, and Glen and Ezell restated this opinion at trial. Griesbach contradicted his own report at trial and claimed it was for residential purposes, and the court found this damaged his credibility. Moreover, he admitted under cross-examination residential development potential did not exist as of September 1, 2009, and this was a future consideration.

## Conclusion

The FMV of the Subject Property as of September 1, 2009 is the only issue on appeal, and this issue is inherently fact intensive. The Bankruptcy Court's Findings of Fact and Conclusions of Law speaks for itself, and it reflects the Bankruptcy Court's thorough analysis of the record, the witnesses, and the relevant law. Thomas may disagree with the Bankruptcy Court's reasoning and conclusions, but he fails to establish the Bankruptcy Court's factual findings amount to clear error. To the contrary, they are entirely reasonable.

Accordingly,

IT IS ORDERED that the judgment of the Bankruptcy Court is AFFIRMED.

SIGNED this the 6th day of November 2014.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE